UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

STONEWALL INSURANCE COMPANY, )
                              )
     Plaintiff,              )
                              )
vs.                           )     Civil Action No. CV-97-B-461-S
                              )
ARGONAUT INSURANCE COMPANY    )
                              )
     Defendant.              )

FILED
SEP 23 1997

ENTERED
SEP 23 1997

MEMORANDUM OPINION

This action is before the court on defendant's motion to dismiss the amended complaint or, in the alternative, to stay the proceedings and compel arbitration.[1] Upon consideration of the pleadings, motions, briefs, evidentiary submissions, and arguments of counsel, this court concludes the motion to dismiss is due to be granted in part, and plaintiff's remaining claims stayed, pending arbitration.

I. FACTS

This is the second motion to dismiss filed by defendant, Argonaut Insurance Company. The first motion was denied on May 27, 1997, but this court nevertheless ordered plaintiff, Stonewall Insurance Company, to file a more definite statement pursuant to Rule 12(e), Fed. R. Civ. P. Stonewall's amended complaint was filed June 10, 1997, and Argonaut filed the present motion to dismiss July 10, 1997.

Both parties are engaged in the reinsurance industry. In that arcane trade, a primary insurer will underwrite a risk, and then

---

[1] Argonaut also filed a motion for leave to file a reply brief, which was granted prior to oral argument, and that reply brief was considered in preparation of this opinion.

pass part of the obligation for any claims arising from the risk to a reinsurer. The reinsurer receives part of the premium from the insured, and agrees to reimburse the primary insurer for a portion of any claims made on the underlying insurance policy. This action concerns risks which Argonaut has reinsured, but in other cases it is apparent that Stonewall has reinsured Argonaut's risks.[2]

### A. Insurance Risks at Issue

The amended complaint identifies five specific insurance risks which are at issue.

#### 1. The Missouri-Pacific claims

Stonewall issued two policies of insurance to the Missouri-Pacific Railroad Company, and Argonaut reinsured portions of those risks. Missouri-Pacific filed suit against Stonewall for costs of environmental contamination, and Stonewall settled those claims on September 22, 1995 for $275,000. (Amended Complaint ¶¶ 11, 13.) Stonewall alleges it billed Argonaut for its portion of the $275,000, but Argonaut refused to pay because it disagreed with Stonewall's method of determining (or "allocating") Argonaut's portion.

#### 2. The Studebaker-Worthington environmental claims

Stonewall issued a policy of insurance to Studebaker-Worthington, Inc., which Argonaut reinsured under a "facultative reinsurance contract," and under "Reinsurance Treaty 423/424," a

---

[2] The parties are currently engaged in a declaratory judgment action concerning Stonewall's duty to pay Argonaut in relation to risks which Stonewall reinsured. Stonewall Insurance Company v. Argonaut Insurance Company, No. 96-C-3261 (N.D. Ill.)

2

reinsurance agreement executed by numerous companies.[3] Studebaker-Worthington, Inc. filed suit against Stonewall for costs of environmental contamination, and Stonewall settled those claims on May 17, 1995 for $550,000. Stonewall alleges it billed Argonaut for its portion of the $550,000, but Argonaut refused to pay because it disagreed with Stonewall's method of allocating Argonaut's portion.

   3.   **The Studebaker-Worthington asbestosis claims**

Studebaker-Worthington, Inc. also asserted claims against Stonewall for payment of certain asbestosis claims. The controversy over Stonewall's responsibilities for the asbestosis claims has not been settled, but Stonewall alleges it has incurred $460,158.26 in indemnity costs and $140.40 in expenses related to the claims. Stonewall alleges it has billed Argonaut for its portion of those costs, but that Argonaut has refused to pay because it fears "double billing."

   4.   **The Treaty 402, or "ROM" claims**

Argonaut, as well as several other reinsurers, executed Reinsurance Treaty 402. Rather than billing each reinsurer for claims under Treaty 402, Stonewall uses an intermediary, ROM Reinsurance Management Company, Inc., ("ROM"), to collect amounts

---

[3] Under a "facultative reinsurance contract," an insurer passes "to the reinsurer part or all of a risk under one or more insurance policies specifically identified in the reinsurance contract." 13A Stephen L. Liebo, Appleman's Insurance Law and Practice § 7681 (Supp. 1997). A "treaty" of reinsurance "is typically a contract under which the insurer cedes to the reinsurer a specified risk on all policies that the insurer will subsequently issue to a particular class of risks or on risks to a particular insured or class of insureds." *Id.*

3

due. Stonewall alleges Argonaut instructed ROM to withhold $14,452.25 owed Stonewall under Treaty 402.

5. **The "PPG" claims under Treaty 423/424**

Treaty 423/424 also covers asbestosis claims made by PPG Industries, Inc. to Stonewall. Stonewall alleges it billed Argonaut $25.62 for its portion of certain claims made by PPG, but Stonewall refused to pay.

B. **Claims Made in Amended Complaint**

Count I alleges breach of contract against Argonaut for alleged failure to pay the Missouri-Pacific claims and Studebaker-Worthington environmental claims in accordance with Stonewall's allocation method. Count II alleges breach of contract for failure to pay amounts allegedly due and payable under the Studebaker-Worthington asbestosis claims, the PPG claims, and the ROM claims.

Count III alleges anticipatory breach of contract, based on Argonaut's alleged policy of refusing to pay Stonewall on any reinsurance contracts. Thus, Stonewall contends Argonaut has breached all of their reinsurance contracts. Count IV seeks a declaratory judgment stating that Argonaut is required to accept Stonewall's allocation methodology, while Count V seeks a declaration that Argonaut must promptly pay Stonewall's claims. Finally, Count VI alleges bad faith refusal to pay in accordance with the reinsurance contracts and treaties.

4

## II. STANDARD FOR 12(b)(6) DISMISSAL

For purposes of a motion to dismiss, factual allegations in the complaint must be taken as true. *Executive 100, Inc. v. Martin County*, 922 F.2d 1536, 1539 (11th Cir.1991), *cert. denied*, 502 U.S. 810, 112 S.Ct. 55, 116 L.Ed.2d 32 (1991). Dismissal is appropriate where it is clear the plaintiff can prove no set of facts in support of the claims in the complaint. *Powell v. United States*, 945 F.2d 374 (11th Cir.1991). Accordingly, this court may dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) only when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action. *Executive 100*, 922 F.2d at 1539. *See also Bell v. Hood*, 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946).

## III. DISCUSSION

### A. Anticipatory Repudiation of Contract Claims

Argonaut moves to dismiss Count III on the grounds that it fails to adequately plead a claim for anticipatory repudiation. According to Argonaut, Stonewall must plead that: (1) Argonaut absolutely repudiated its obligations under all reinsurance contracts; (2) Stonewall was ready, willing, and able to perform its part of the contracts; and (3) Stonewall was damaged thereby. (Brief in Support of Motion to Dismiss at 8.) Stonewall, however, claims it must merely plead "an unqualified refusal, or declaration of inability, substantially to perform according to the terms of its obligations." (Response Brief at 10)(quoting *Box v. Metropolitan Life Ins. Co.*, 168 So. 220, 222 (Ala. 1936)).

5

Without deciding on the other elements of anticipatory repudiation, the court finds Stonewall was required to plead it was damaged in some way by the alleged anticipatory breach. "[I]f there was an anticipatory breach of the contract the appellee had a right to treat the agreement at an end so far as further performance was concerned and to maintain an action at once <u>for the damages occasioned by such breach</u>." *Draughon's Business College v. Battles*, 50 So. 2d 788 (Ala. Civ. App. 1951)(emphasis supplied). Count III contains no allegation that Stonewall has been damaged by the alleged anticipatory breach. Furthermore, Stonewall's ad damnum clause only requests the following relief:

> WHEREFORE, Stonewall Insurance Company respectfully prays that this Court:
>
> a)  Determine and adjudicate that Stonewall is entitled to immediate payment of $173,426.05, constituting Argonaut's share of the Missouri-Pacific Claims, the Studebaker-Worthington Environmental Claims, the Studebaker-Worthington Asbestosis Claims, the ROM Claims and the PPG Claims presently due and owing by Argonaut to Stonewall;
>
> b)  Find and declare that Argonaut must promptly pay Stonewall as such additional amounts become due and owing when properly presented to Argonaut by Stonewall in accordance with its contracts with Stonewall and reinsurance law;
>
> c)  Find and declare that Argonaut may not object to Stonewall's allocation of expense and settlement amounts, so long as the allocation is reasonable, made in good faith and considers the fairness to all reinsurers involved or potentially involved in the settlement; and
>
> d)  Grant such other and further relief, including costs of this suit and punitive damages, as the Court deems just and appropriate.

6

(Amended Complaint at 16-17.) Part (a) of the *ad damnum* clause is clearly directed to the breach of contract claims in Counts I and II, while part (d) is directed towards the bad faith claim of Count VI. Parts (b) and (c), however, seek only declaratory relief. Thus, while Count III is styled as a claim for anticipatory breach, it seeks relief in the form of a declaratory judgment, rather than damages. Stonewall has failed to plead damages, and Argonaut's motion to dismiss is due to be granted as to Count III.

B.  **Advisory Opinions**

Argonaut claims counts III, IV, and V request impermissible advisory opinions, because they seek declaratory relief on speculative matters. This court's power to issue the requested declaratory judgments is derived from the Declaratory Judgment Act, 28 U.S.C. § 2201.[4]

> [T]he Declaratory Judgment Act does not enlarge the jurisdiction of the federal courts but rather 'is operative only in respect to controversies which are such in the constitutional sense. ... Thus the operation of the Declaratory Judgment Act is procedural only.' *Wendy's Intern., Inc. v. City of Birmingham*, 868 F.2d 433, 435 (11th Cir. 1989).
>
> > At an irreducible minimum, the party who invokes the court's authority under Article III must show: (1) that they personally have suffered some actual or threatened injury as a result of the alleged conduct of the defendant; (2) that the injury fairly can be traced to the challenged action; and (3) that it is likely to be redressed by a favorable decision.

---

[4] 28 U.S.C. § 2201(a) provides, in relevant part: "In a case of actual controversy within its jurisdiction, ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought...."

7

> *Caulkins*, 931 F.2d at 747 (11th Cir. 1991)(citing *Valley Forge College v. Americas United*, 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982)). The determination of whether an actual case or controversy exists is determined on a case-by-case basis.

*GTE Directories Publishing Corp. v. Trimen Am., Inc.*, 67 F.3d 1563, 1567 (11th Cir. 1995). "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S. Ct. 510, 512, 85 L. Ed. 826 (1941).

After reviewing the amended complaint, it is apparent that Stonewall seeks judgment on matters which are not sufficiently immediate or real to warrant declaratory relief. Count III states:

> 67. Although the 650 page computer printout identifies all current claims which have been ceded, in whole or in part, to Argonaut, <u>it is possible that additional claims (under additional Stonewall policies and/or under additional reinsurance contracts issued by Argonaut to Stonewall) will arise in the future</u>. In light of Argonaut's direction to its agents and intermediaries, including ROM, not to pay any monies to Stonewall, under any circumstances, until Stonewall agrees to pay millions of dollars to Argonaut under unrelated reinsurance agreements, and in light of Argonaut's internal decision not to pay any monies to Stonewall, under any circumstances, until Stonewall agrees to pay millions of dollars to Argonaut under unrelated reinsurance agreements, <u>the existence of such new claims would give rise to additional anticipatory breaches of Argonaut's contractual obligations</u>.

8

(Amended Complaint at 13-14)(emphasis supplied). Counts IV and V incorporate that paragraph by reference, and also make the following statements:

> 70. Stonewall may submit additional claims which require allocation to Argonaut (under the reinsurance contracts described above) in the future.

(*Id.* at 14)(emphasis supplied).

> 75. It is expected and anticipated that additional amounts will become due and owing from Argonaut to Stonewall under the reinsurance contracts described above.

(*Id.* at 15)(emphasis supplied). Thus, each count specifically requests relief for additional claims, which may arise in the future under different policies.

Stonewall argues that it only seeks relief for claims which have occurred, will definitely be billed to Argonaut, and will only become worse in the future. That argument is flawed in two respects. First, it ignores the impact of paragraph 67 which seeks relief for "all current claims," and "possible ... additional claims" which "will arise in the future."

Second, it assumes Stonewall will be required to pay the open claims, and further assumes that Argonaut, as reinsurer, will be required to make payment. There are too many contingencies to accept that assumption. All insurance policies are replete with conditions and exclusions of coverage which must be met before an insurer's obligations are complete. Furthermore, the conditions and exclusions of the reinsurance contracts must be met before Argonaut's liability is fixed. Indeed, Stonewall's *ad damnum*

9

clause recognizes that Argonaut is only required to pay claims which are "properly presented." (Amended Complaint at 16.) Additionally, the *ad damnum* clause recognizes Argonaut's right to object to an allocation if it is not "reasonable, made in good faith, [or considerate of] the fairness to all reinsurers...." (*Id.*)

Stonewall cannot demonstrate a "practical likelihood that the contingencies will occur ...." *GTE Directories Publishing Corp. v. Trimen Am., Inc.*, 67 F.3d at 1569. At most, there is a <u>possibility</u> that Argonaut will be required to pay <u>if</u> all conditions of the insurance and reinsurance policies are met. This is not "[t]he familiar type of suit in which a liability insurer seeks a declaration that it will not be liable to indemnify an insured person ...." *Id.* In those "familiar" cases, the facts demonstrating the duty to indemnify are complete upon filing suit, and the only contingencies are that "[t]he injured person may not sue or he may not obtain judgment against the insured ...." *Id.* Here, Argonaut's duty to pay on the outstanding claims is not fixed. Furthermore, a declaratory judgment would be useless because a case by case determination would be required to ascertain if claims were "properly presented," or if the allocation was "reasonable," "in good faith," and "fair." Those contingencies are too speculative, and demonstrate that any controversy between Stonewall and Argonaut is neither sufficiently immediate nor real to warrant the issuance of a declaratory judgment. *Maryland Casualty Co.*, 312 U.S. at 273, 61 S.Ct. at 512.

10

This court will not exercise jurisdiction over claims which are not ripe for review, and Counts III, IV, and V are due to be dismissed. Furthermore, to the extent that the parties have justiciable controversies related to the five claims enumerated in the amended complaint,[5] the pending breach of contract claims can sufficiently resolve all issues of allocation and damages.

C. **Dismissal for Failure to Comply with the Rules of Civil Procedure**

Argonaut alleges that the amended complaint fails to comply with the "short and plain statement" requirements of Rule 8, Fed. R. Civ. P. This court has considered Argonaut's arguments, carefully reviewed Stonewall's amended complaint, and concluded that it adequately complies with Rule 8. There is no "unnecessary prolixity [which] places an unjustified burden on this Court and Argonaut to select the relevant material from a mass of verbiage." (Brief in Support of Motion to Dismiss at 12.) Thus, Argonaut's motion to dismiss the complaint in entirety is due to be denied.

D. **Stay of Remaining Claims Pending Arbitration**

1. Arbitrability of Claims

Stonewall concedes the existence of valid arbitration clauses in Treaty 423/424 and Treaty 402, but disputes the arbitrability of claims in this action: "[U]nless Argonaut can demonstrate that its refusal to pay treaty balances arises as a result of legitimate non-pretextual contract issues, Stonewall asserts the so-called treaty 'disputes' are not arbitrable because they do not present

---

[5] The Missouri-Pacific Claims, Studebaker-Worthington Environmental claims, Studebaker-Worthington Asbestosis claims, PPG claims, and ROM claims.

11

legitimate contract disputes, but only bad faith claims which in and of themselves are not arbitrable." (Response Brief at 16.) Stonewall fails to explain why it labeled Counts I and II as breach of contract claims, but now considers them only to be bad faith claims. Furthermore, Stonewall cites no authority for the proposition that bad faith claims are not arbitrable. In fact, the Eleventh Circuit has stated:

> The law is clear that tort claims and claims other than breach of contract are not automatically excluded from a contractual arbitration clause. ... Whether a claim falls within the scope of an arbitration agreement turns on the factual allegations in the complaint rather than the legal causes of action.

*Gregory v. Electro-Mechanical Corp.*, 83 F.3d 382, 383 (11th Cir. 1996).

The Treaty 423/424 arbitration clause provides: "In the event of any irreconcilable dispute between the reinsurers and the company in connection with the contract, such dispute shall be submitted to a board of arbitration for arbitration." (Amended Complaint Exhibit E at 8.) Similarly, Treaty 402 states: "Any dispute arising between the parties hereto with reference to any and all transactions or terms and conditions under this Agreement, shall be referred to three disinterested arbitrators...." (*Id.* Exhibit G at 30.) Those clauses are broad enough to encompass the bad faith and contract claims pertaining to the treaties.

> Although couched in various terms and theories of action, every claim in this complaint targets the fact that the plaintiffs did not receive the amount of money that they thought they should have ... and that the defendant ... caused that loss.

12

> The structure of the complaint and the allegations of fact reflect that these claims all arose under the agreement. There are seven counts, and every count incorporates all of the facts alleged in the count denominated as a breach of contract claim. Thus, the complaint itself says that the facts constituting defaults under the contract are a critical part of the so-called tort claims. If the [defendant] had fully complied with the contract, as interpreted by the plaintiffs, there would be no tort claims.

Gregory, 83 F.3d at 384. The Gregory court compelled arbitration, and its analysis is equally applicable to the present action. The first two counts of Stonewall's complaint allege breach of contract, and every other claim in the complaint arises from the alleged breaches. Thus, the court rejects Stonewall's bad faith argument, and concludes Argonaut's motion to compel arbitration is due to be granted with respect to the remaining breach of contract and bad faith claims relating to Treaty 423/424 and Treaty 402.

### 2. Stay of Non-Arbitrable Claims

Argonaut contends the non-arbitrable claims should be stayed pending arbitration, while Stonewall asserts the action should actively continue. The decision to stay litigation of non-arbitrable claims is a matter largely within the district court's discretion, to control its docket. *American Recovery Corp. v. Computerize Thermal Imaging, Inc.*, 96 F.3d 88, 97 (4th Cir. 1996); *McCarthy v. Azure*, 22 F.3d 351, 361 n.15 (1st Cir. 1994); *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 856 (2d Cir. 1987). "Broad stay orders are particularly appropriate if the arbitrable claims predominate the lawsuit and the nonarbitrable claims are of questionable merit." *Genesco*, 815 F.2d at 856. "Another factor to be considered is whether many of the central issues in the

litigation will be resolved or advanced by the arbitration."
*Mutual Benefit Life Ins. Co. v. Zimmerman*, 783 F. Supp. 853, 876
(D.N.J.), aff'd, 970 F.2d 899 (3rd Cir. 1992). Argonaut claims
much of the present dispute arises from set-off issues, set-off
will be raised at arbitration, and arbitration could consequently
dispose of the disputes before this court.

At oral argument, the parties agreed that a set-off clause in
Treaty 423/423 was deleted by endorsement, but disputed the effect
of that deletion.⁶ Whatever legal effect the deletion may have is
of little consequence in light of the broad power given to the
arbitrators under Treaty 423/424 and Treaty 402.  Under Treaty
423/424 "[t]he arbitrators are relieved from any judicial
formalities and may abstain from following the strict rules of
evidence." (Amended Complaint Exhibit E at 9)  Under Treaty 402,
the arbitrators are directed to consider the arbitration agreement
as "an honorable agreement rather than merely a legal obligation
and they are relieved of all judicial formalities and may abstain
from following the strict rules of law." (Amended Complaint Exhibit
G at 31.)

Thus, the arbitrators will have broad power to consider any
matters pertaining to the treaties, including set-off issues.  This
court does not endorse the consideration of set-off issues, but
merely acknowledges the arbitrators have been given broad enough
power to do so.  The court further agrees that the resolution of
the set-off issues by the arbitrators could dispose of the

---

⁶Treaty 402 does not contain a set-off provision.

14

remaining breach of contract and bad faith claims. Accordingly, the remaining breach of contract and bad faith claims arising from the Missouri-Pacific and Studebaker-Worthington facultative contracts will be stayed pending completion of the arbitration proceedings.

## IV. CONCLUSION

For the foregoing reasons, the court concludes defendant's motion to dismiss is due to be granted with regard to Counts III, IV and V of the amended complaint. The motion to dismiss the action in its entirety, for failure to comply with Rule 8, is due to be denied. The breach of contract and bad faith claims of Treaty 423/424 and Treaty 402 will be submitted to arbitration, and the remaining claims, pertaining to facultative reinsurance contracts, stayed, pending completion of arbitration.

DONE this the 23rd day of September 1997.

United States District Judge